three-hole punch but that is the microphone on the desk picking up your voice stay behind it don't wander from the podium this is being recorded and would be posted later today I think but regardless will be posted at some stage where it can be listened to by us as well as by anybody else who is interested and with those the first case of the day we will hear in just a minute uh I'll call the first case U.S. v. Vallejo Ms. Ling good morning your honors may it please the court Margaret Ling for Mr. Demetrio Vallejo Mr. Vallejo was convicted of one count of harboring an undocumented alien within the United States in violation of 8 U.S.C. section 1324 and he was sentenced to 57 months of imprisonment the issue in this case is whether the district court correctly enhanced his offense level under the guidelines section 2L1.1b5 for brandishing or otherwise using a dangerous weapon are there any photos in the record of the bed I guess it was with these objects on it no your honor not that I'm aware of no there was no so the placement the orientation how they would have been perceived that's not photographed that's not in the record your honor no um and just just to briefly refresh the court about the facts um Mr. Vallejo and his co-defendants Esther Cano and Joe uh George Love were harboring some undocumented aliens at Ms. Cano's house in Westlake O Texas and early on the morning of the 29th Mr. Vallejo who's uh apparently his role in the in the um harboring was to do a little bit of transportation and to went to the house and told one of the aliens and Ms. Sandra Llamas that he was moving her to another place in fact he uh drove her down the road to Ed Couch Texas took her into a residence and sexually assaulted her in the bedroom when she resisted he threatened her by telling her they had information about her family now also present in the room and noticed by Ms. Llamas where it was a screwdriver um I think one or two maybe two small knives or a knife and a blade and a plastic pipe or plastic board and when Mr. Vallejo went to the door to answer a knock she removed these things and put them away and she went to the door hoping thinking she was going to be able to escape but she saw Mr. Vallejo at the door arguing with a and he was holding a knife in his hand so I was uh if I read her statement correct she said the pipe was on the bed did she say where the blades were no she didn't your honor no she didn't say no evidence in the record of where they were there is none just that she saw them and they were in the room but she did move those knives he did hide them or put them on a window sill think she put them on a window ledge yes your honor she did and um she saw the knives wherever they were she saw them absolutely um now there's no evidence at all that Mr. Vallejo was aware of them that record's just silent about that but she definitely saw them and when he came back in the room she didn't see that he still had the knife that he'd been arguing with Mr. uh Leobardo about what was Vallejo's connection to the house this is the house in Edcouch it's a house in Edcouch you know it's a little to the house what evidence is there how long he might have been at that house there is really no evidence and in fact the government at the sentencing hearing even posited that this was an abandoned residence so that makes it even less likely say that again the government um if you look at page 135 of the record the sentencing transcript you'll see that the government refers to it as an abandoned residence and that makes it even less likely that he actually went there and carefully laid out a screwdriver some small blades and a piece of plastic pipe in order to intimidate Miss Lamas when he took her there far more likely is that these were just at that house and that's basically the problem because in order to show that he intimidated her with and let me just say also that as the court's aware she did give a statement at the sentencing and while she was clearly afraid of the assault she was adamant when the court questioned her that he never threatened her with any of these items and in order to for the for the government's burden for the enhancement is to show that um the that Mr. Vallejo used a dangerous weapon or made the presence of a dangerous weapon known to Miss Miss Lamas in order to intimidate her and to have the otherwise used enhancement it's even more stringent they have to show that he actually threatened her with the weapons um so the the basis for the enhancement in the district court was the presence of the screwdriver and those other items in the room which means that in that regard the question is does just the mere presence on this record the mere presence of those items in the room with her knowing about them without with no evidence that Mr. Vallejo ever even touched them or referred to them in any way is that any any doubt that they were his we don't know if they're his there's no nothing to say that they're his no your honor um he never mentioned them he never referred to them um like I say there's even some it's unclear about even the residents so um we we would certainly say that that is is not enough the government failed to meet its burden of proof counsel we we have the fact finding by the judge at least in accepting of the PSR and the argument position that this was brandishing um what is necessary which I think is what you said for brandishing is that it was displayed or the presence of the weapon was otherwise made known to the victim in order to intimidate so judge crane I think it was uh must have made based on circumstantial evidence the uh finding that that that uh Vallejo did want her to see and be intimidated by these uh so I mean it's a fairly high standard to overturn a fact finding by the trial judge uh what you know you read the evidence one way uh he interpreted another isn't that what we have well with all due respect to the district court I have to say that I think it's very easy to look backwards from the fact that she was sexually assaulted which is clearly awful um she was clearly frightened was she placed in this room by Vallejo yes he took her there to this room where the knives and I I believe yes he took her into the bedroom um and she was clearly frightened but that's not enough I think if you can and you know you look at the government's cases they they um did a 28j letter on Reyna Esparza which is this court's well-written yes most written statement by the honorable judge graves and uh also Mendoza Rojas and I believe Fuentes-Jaimes all those are well-known cases those the distinguishing factor there those all involved firearms and those firearms by their nature are just intimidating they're dangerous weapons now a screwdriver a small blade yes I mean they can be dangerous weapons but counsel you combine that with the fact that she sees him clearly brandish and use another knife in his argument with his colleague uh and uh it doesn't take much to conclude that that it may not be a brandishing in her case but isn't it a use no your honor because it's interesting the way if you look at way the guidelines written first of all it says that it has to be with the they have the presence of the weapons have to be made known to the victims the intent to intimidate her then it says they don't have to be visible so it's really irrelevant that she saw them the whole focus is on the fact that he used them with intent that he made the presence known with intent to intimidate her like likewise there's no requirement in the guideline that the alien is actually is intimidated that's counsel I guess there's several things that concern me you agree that we look at the totality of the circumstances I do your honor yes and you seem to make at least attach some significance to your view that this was not Mr. Vallejo's residence well we don't know for sure we don't know certainly but in the PSR different witnesses referred to it as his residence isn't that right in the PSR there are statements but for some for some place the government it doesn't mean he was actually living there because in some for some reason the government referred to it as abandoned well it was a place where he felt comfortable enough that he could take someone and be alone with him to sexually assault them I he certainly took her there and apparently there was no we don't know that there was anybody else there and then her testimony is that there was a screwdriver a small blade and a small knife right and then we further know at least from her testimony that whatever she thought about the presence of those weapons when he went to confront the person who knocked on the door uh he carried he had a blade in his hand she looked out and saw him but she was concerned enough that she tried to hide the blade and the knife that were present in the room right and she did that before she went to the door before she saw him at the door that's the way the facts read so she perceives them as a danger I think there's no doubt that she perceived them as a danger she said she was frightened but that's not the test your honor the fact that she was intimidated the fact she saw them that's not what's salient under the guideline the guideline is not based on how can we say that it's clearly erroneous for the sentencing judge to conclude that by taking her to the bedroom where the presence of these weapons were in proximity is not using forget brandishing is not using yes it's clearly erroneous that it would be otherwise using because for that under the guideline he had to specifically threaten her with the weapons that's the standard under the guideline and and I don't believe even the government would say that he did that to be to be used it must be handed in the hand of the perpetrator and used as a threat yes your honor if you look at the Dunigan case you'll see that this this court has made that very distinction with its respect to brandishing and otherwise using brand otherwise using the guideline actually states it's more than brandishing you've got to actually like I think Dunigan was the defendant was doing a bank robbery he goes up to the teller he points the gun in the face and says give me the money that's otherwise using it's less than actually firing a gun but it's more than brandishing brandishing is you have to make the presence of the weapon known in order to intimidate regardless of whether brandishing I'm worried about using because when you take someone into a bedroom to use the bed in the act of rape or sexual assault in the presence visibility of these knives sufficient that when he's out she moves them it's hard for me to say ah but that's not use well I understand but that's not the stand that why the court would feel that way but that's not the standard under of this of the guideline your honor we'll see what the government said yes um counsel is there any reason we shouldn't consider the fact that Valeo threatened to stab uh Lombardo Cano any reason we shouldn't consider that he threatened to stab him at a point where he interrupted what was the sexual assault and so why wouldn't that threat to stab Cano be sufficient to justify using the enhancement your honor um that's the government's fallback position it wasn't actually the position in the PSR and I think that was a good reason it wasn't the position in the PSR and that reason is this the problem with it is that um the government didn't show that Leobardo's presence at the house had anything to do with Miss Lamas um or had any relation to the alien smuggling offense Leobardo was not a participant in the offense he was not a smuggled alien um we have no knowledge there's nothing in the record that establishes why he went there all we know is that he went to the door of the residence and that Mr. Vallejo threatened him with a knife and he ran away from Mr. Vallejo's standpoint he was certainly interrupting him and that that's why he used the knife to get rid of him wasn't it that's that is true this all occurred at the same time and it's certainly technically true that the alien offense smuggling offense was going on that they were still being harbored the rest of the aliens were still being harbored but the problem is that this really was there's nothing the temporal aspect of it is not going to be enough there is absolutely nothing to show that there was any relation between Leobardo coming to the house and either the alien smuggling offense or what was happening with um Miss Miss Lamas he's got multiple potential weapons screwdriver blade knife and the life he threatened that's right but the fact well let me and and uh in this this is not a series of this is a movie it's ongoing and with all of those weapons at hand at his brandishing one against the other man it it's hard for me to say he's not using those weapons in an effort to get her to submit well your honor may i respond sure thank you um i think you could look at it like this supposing at a stash house there are all the aliens in the stash house one of the smuggler goes outside he gets in a fight with his neighbor and he picks up a shovel and starts attacking the neighbor now there's no doubt the alien smuggling harboring offense is ongoing the aliens see it they may not like it they may think he's a violent man but it's got nothing to do with the alien smuggling offense and i don't think you could ever say that he was they may look at it and see it but it's clear he's not directing that at the aliens or that it has anything to do with it uh i submit and that was my question is between smuggling aliens and sexual assault on the bed in the bedroom where the uh all of this happened but that's fine we've got your argument do you want you'll have time for rebuttal okay thank you your honor so good morning may it please the court anna calorie on behalf of the united states we ask that this court affirm the sentence and judgment of the district court because the enhancement was based on the defendant's display of the weapons to the victim during a sexual assault and it was plausible in light of the record as a whole we we've already discussed opposing counsel the sort of standard review of looking at this but the problem with the circumstantial evidence is what is there to justify the judge saying that vallejo had any intent to display these weapons the room i think this evidence was in complete disarray a lot of trash around uh the purpose of these objects only one of which clearly was on the bed i think the screwdriver is unclear so how can we how could the judge make the evidentiary leap to say it was vallejo's intent to display those to the victim well your honor um i would there was plenty of evidence here and it wasn't a leap to conclude that he displayed these weapons for the purpose of intimidating her going back to the ownership of the home when he was interviewed by investigators the defendant himself stated in paragraph 11 of the psr that he took her to his house so he claimed ownership of it in the sentencing transcript the prosecutor said he believed it was abandoned but also it was likely owned by the defendant so there is sufficient evidence in the psr that this was his residence and therefore that he knew what was there um it was also as your honor pointed out a place that he felt sufficiently comfortable to take this victim to for the purpose of sexual assault he purposely removed her from the stash house all by herself took away her cell phone drove her to this abandoned location that he owned that he claimed is his residence brought her into the bedroom where these weapons were displayed now it was apparent to the victim immediately that there were weapons there and the intent for him to bring her in there was for sexual assault at this point it was likely clear to the victim that that was the purpose of being in the bedroom he asked her to doesn't that sort of cut the other way it seems to be taken to a place where there are dangerous weapons that he doesn't have control of and then leaving her in the room it almost makes me wonder if there's enough evidence to assume he knew they were there she could have used them on him i mean it was just an odd part of the facts that these weapons were there not under his control and he left her with them doesn't that cut the other way i don't believe so your honor i believe when they walked in there if they were apparent to her they were likely apparent to him as well and when he left he left with a kitchen knife in order to go attack the leobardo cano so he he was armed there in addition when he was arrested later there was a box cutter in his clothing when they arrested him so there were a number of weapons around we don't know exactly where they were in the bedroom we know that there was a screwdriver and two knives or a knife and a blade that were isn't there a problem between active and passive the guidelines require either of two acts activities act uh brandishing or using i'm satisfied for one that he didn't brandish by looking at the dictionary definitions of those so we're down to using but again he has to use them actively and the fact that they are there passively just sitting there one screwdriver on the bed and a couple of blades somewhere other than the bed how does that get to the act of use well your honor i believe that the brandishing according to the oxford english dictionary it's to open up or expose to view exhibit to the eyes or show so by the act of bringing her into this room where they were openly displayed he brandished them there is no functional difference between having a well let me let me interrupt you and just give you the the two dictionary definitions that i found american heritage says brandishes wave or flourish menacingly or display ostentatiously oxford english dictionary says to flourish a weapon by way of threat or display or to wave or flaunt so i don't see how you can get what this record shows anywhere approaching branding brandishing and it seems to me that if it's going to stick it's got to be through use and again that's the active verb of use and how did he use these weapons as opposed to just their inactive presence in the room i have two points on that your honor i believe that those definitions of display is not necessarily what this court has typically found because in a number of cases where the defendant simply has a firearm on the waist and doesn't necessarily flourish around or brandishing when we're correct we're getting away from brandishing we're down to you okay so moving on to um i would argue that this still fits within the definition of brandishing but if we go to otherwise used the difference has tended to be for displaying it's without pointing or targeting otherwise used is pointing or targeting here i think you could actually make a decent argument that the um there was one victim brought into a room the weapons were displayed the they were open they were lying there for the purpose of intimidation and it was directed at one specific victim the victim that he brought in there to sexually assault and yes there was not a the defendant did not pick it up he did not hold it he did not wave it around but this is also within the context of a sexual assault this is different than for example the actions with leo bardo where the defendant went to the front of the house and he tried to chase him away he wanted to get him away this is for the purpose of a sexual assault which is a different act of violence completely um and so the levels of intimidation are perhaps more subtle at least in this case he threatened her family he had weapons displayed it was very clear to her that he would use the family had nothing to do with physical harm it did not have anything to do with physical harm but all of the the intimidation the weapons the threat to the family the isolation the lack of a cell phone all of this was the for the purpose of the sexual assault to get her to comply with his demand that she have sex with him and so but she her testimony was that he never threatened her with any use of the weapons is that right correct he did not pick he did not pick it up he did not point it out never mentioned the weapons correct never even made a gesture correct towards the weapon correct he did not do that however if you look at her testimony she told the um she in the ps according to the psr in paragraphs 12 and 13 she feared that he would hurt her she moved them to avoid being hurt and she also complied because she feared for her life those are direct those are separate fears from the sexual assault this is a fear of physical harm for her life then when she was at the sentencing hearing you correct your honor she had negative answers to whether or not he ever put any sort of weapon to her threatened her but she did say that whether or not she was in fear of the weapon she replied yes when asked whether she was worried that he might use the knife to harm her she said yes what i was afraid of was that he would kill me so there's a very real threat of these weapons even if he did not pick it up and and point it at her and as this court has held in reina esparza the threat and the intimidation does not have to be direct or even veiled it's the totality of the circumstances and here there is enough for the district court based on the totality of the circumstances to conclude that he used these weapons would it be appropriate for us to rely on mr valeo's threats toward kano to justify the enhancement absolutely your honor um and there is even though the district court didn't address he didn't and this court has held numerous times that this court can affirm on any ground supported by the records and the psr does support that um let me ask you as a foundation for judge graves the answer you still need to judge graves um i don't see what judge crane ever articulated his reasons at all other than to say i agree with the psr i adopt the psr or something like that so we don't really know his personal analysis during his fact finding uh we don't have explicit fact finding no your honor he adopted the psr in its entirety in the facts there um however psr did not rely on the weapon that was used on kano the psr uh relayed the facts as it relayed to kano um and then in the uh reply to the objections by the defendant and the reply for this enhancement references both the weapons in the bedroom and the use of the kitchen knife on kano so um while not an explicit reliance on there those two facts and those two use of weapons are relied upon in the psr and the psr refers to a criminal charge being brought against mr vallejo for the use of the weapon against kano is that right yes your honor um in addition to the sexual assault and going back to uh questioning earlier about whether or not uh kano's presence there was related to this incident in paragraph 13 of the psr after esther could not get a hold of the defendant or the victim through the through the cell phone she called her sister and her sister it says that um she called her sister uh regarding the situation so she called her sister for the purpose of finding the defendant and the victim and her sister said that her brother-in-law leo bardo kano had already checked his residence and was confronted by him who was carrying a knife and so he ran away so the purpose of him going over there was to figure out the situation to figure out the so there is a link between his presence there and the defendant chasing him away okay you got anything further if there are no further questions i'll rest on my brief thank you all right counsel your honor i just want to start immediately addressing what um my honorable opposing counsel just said about the psr and what was said um let me read it to you esther kano stated that ruth kano informed her that their brother had checked on the residence and was confronted by demetria valejo who was carrying a knife so he ran away the missing link here is why he went there there's nothing that says that he went there because they said there was some problem going on that would have been in the psr the psr which sets out the facts and has been very clear about what happened would have put that in there we just don't know why leo bardo went over there um that's there's nothing to to support what the government said and the fact that she saw him or the let's go back to the weapons in the bedroom i think the court um judge wiener was absolutely correct it's inactive presence that's all we have and again it's very important to to to notice that these are not per se dangerous weapons not even a knife especially when we don't even know what kind of knife it was we know it was small i mean it could have been a dinner knife small i mean it could have even been a butter knife it was a knife it could have been uh a pocket knife that was we don't know anything about him that the victim was concerned with them we do know enough about the knives that the victim was concerned about them and hit him correct so they're so you know whatever ambiguity there may be she was worried about him so i would imagine they looked harmful to her she was definitely concerned about it and i we don't dispute that that's clear from the record she testified but again that's not the standard for finding that he brandished or let me talk about the comment uh commentary in the guidelines it does use the word brandish but it says brandish means that all a part of the weapon was displayed or the presence of the weapon was otherwise made known so whatever dictionary definitions may say about the word brandish for purposes of what we're dealing with isn't that our definition and it means to display or make known the presence of the knife the screwdriver and the rest of the sentence which is what we are here about today is that it was with the intent to intimidate absolutely and that's um that's the issue here yes i certainly agree with the court about that um but again the government keeps referring to well he displayed them but we don't even have any evidence that he deliberately displayed those weapons i mean those items um was his residence his house all about that he took her there so he circumstantially uh the finding would be based on that he had some control over that property and would have known what was there even given that your honor here's the problem that we have and what distinguishes it from all the other cases and i can i can say that i actually did a search of all the all feds search to see if there's anything with brandishing you know within 20 of screwdriver in 201.1 i didn't find anything the salient point here is that these are ordinary items yes they fall within the definition literally of dangerous weapon but they are not what one ordinary thinks ordinarily thinks of as a dangerous weapon and there has to be something um that actually makes them in that way um and and it's not like a gun in all those cases the court was right the cases that he tells them in uh reina sparza he says bring me my gun he has it on his waistband we don't have anything like here i would submit that in a case like this i think the court should should be very wary about making this leap and saying just because they're there and she was afraid of them that that means they were brandished you i think when you have something that's an ordinary item that could be found in anybody's house you have to very clear and very unambiguous proof and evidence that that was the purpose that they were there in order to intimidate the person and we don't have that here your honor it's just not here and so um we would submit the court should um vacate the sentence in remand because as we shown in our brief the error was not harmless all right counsel thank you thank you both